UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

CHUM JOSHUA STINE, Plaintiff,

v.

MICHAEL GROFF, d/b/a/ President and Chief Executive Officer, Toyota Motor Credit Corporation, Defendant.

Case No. 2:14-cv-235

OPINION AND ORDER
(Doc. 7)

Plaintiff Chum Joshua Stine, proceeding *pro se*, brings this action against Defendant Michael Groff, President and Chief Executive Officer of Toyota Motor Credit Corporation ("TMCC"), alleging federal and state law claims arising from Stine's attempts to discharge two automobile loan accounts. (Doc. 1 at 10.) Groff moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, Groff's Motion to Dismiss (Doc. 7) is GRANTED, and all claims against Groff are DISMISSED.

Factual Background and Procedural History

Stine alleges that he and his wife, Stacy Marie Stine, purchased two 2014 Toyota Prius automobiles (hereinafter "Vehicle #1," referring to VIN JTDKN3DU2E1751840, and

"Vehicle #2," referring to VIN JTDZN3EU4EJ000994.) The Stines entered into loan agreements with TMCC through Toyota Financial Services ("TFS")[1] to finance each purchase (hereinafter "Account #1," referring to the account corresponding with Vehicle #1, and "Account #2," referring to the account corresponding with Vehicle #2.)

On July 8, 2014, Stine allegedly executed two documents (hereinafter referred to as the "items" or the "EFT only instruments") made out to TFS, each of which he mailed via certified mail. Each item resembles a personal check drawn on the account of "Chum J. Stine." (Docs. 1-19.) Stine made out one item for $33,431.82, the payoff balance owed on Account #1, and made out the second item for $40,725.36, the payoff balance owned on Account #2. On the front of each item, Stine wrote,"E.F.T. Instrument only" and "For Setoff & Discharge of Debt." (Docs. 1-6, 1-19.) On the back of each item, he wrote, "Do Not Deposit E.F.T. Only for Setoff & Discharge of debt" and dated and signed under the indorsement line as "Authorized Representative Without Recourse." (Docs. 1-6, 1-19.)

Stine alleges that TFS received and accepted both

[1] TFS is a service mark and brand name owned by TMCC.

payment documents on behalf of TMCC on July 12, 2014. Stine claims that TFS should have "processed the setoff" and discharged each account, or otherwise returned both payment documents, stating any defects, "before the same or next business day midnight deadline as required by banking laws." See e.g. Doc. 1 at 7.

Instead, on July 15, 2014, TFS sent Stine a check in the amount of $14.40 "for overpayment" on Account #2 (hereinafter "overpayment check"). Stine claims that the overpayment check confirms that TMCC, acting through TFS, fully discharged Account #2. However, on July 23, 2014, TMCC sent separate notices to Stine and to his wife demanding past due payments on Account #2.

TMCC also did not discharge Account #1. Instead, TFS sent Stine a "Notice of Incomplete Request" on July 25, 2014 which states, in relevant part, "[w]e are unable to process your Title Change. Your payment you sent to Toyota Financial Service[s] ("TFS") was returned and your account has been reopened." (Doc. 1-9.) Stine alleges that this notice "confirm[ed] that [Account #1] was already lawfully set[]off and discharged[.]" Furthermore, TMCC allegedly "was now attempting to unlawfully reverse this setoff and discharge and withhold sending [Stine] the Certificate of

Title and Lien Release."

On August 4, 2014, Stine returned the overpayment check and all of the notices to Groff, in his capacity as President and CEO of TMCC. Stine included a letter demanding that TMCC discharge Account #2 or otherwise provide an accounting within fourteen days. Stine further warned that failure to respond would "ratify" an affidavit included with the letter and would constitute an admission of liability for actual fraud, constructive fraud, and fraud in the factum, as well as violations of 18 U.S.C. §§ 655 and 656. Stine sent a similar letter with respect to Account #1 on August 8, 2014. Groff did not respond to either letter. On August 29, 2014, Stine sent Groff another letter making similar demands with respect to Account #1, to which Groff also did not respond.

On October 29, 2014, E&S Recovery, a hired agent of TFS/TMCC, allegedly removed Vehicle #1 from Stine's home in Warren, Vermont.

Stine alleges that Groff "defaulted by private due process of law" and is liable for common law fraud and breach of contract[2] and for violations of 18 U.S.C. §§ 655

---

[2] The Court construes Stine's breach of contract claim from the facts alleged. See Phillips v. Girdich, 408 F.3d 124, 130

and 656. Stine also brings claims pursuant to pursuant to 42 U.S.C. § 1983 for violations of the Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, and Fourteenth Amendment. Stine seeks declaratory and injunctive relief, monetary damages, as well as a writ of replevin with respect to Vehicle #1.

Groff moves to dismiss for failure to state a claim upon which relief can be granted, arguing that Stine's alleged "EFT only instruments" did not constitute valid payment with respect to either loan account, and that §§ 655 and 656 do not provide a private right of action upon which Stine can recover (Doc. 7-1 at 6, 9). Groff further argues that Stine's fraud claims fail to meet the heightened pleading standard required by Fed. R. Civ. P. 9(b). Id. at 8. Stine opposes the Motion.

Standard of Review

Defendant seeks dismissal pursuant to Fed. R. C. P. 12(b)(6). Filings by self-represented parties are "to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards

(2d Cir. 2005) ("pro se litigants . . . cannot be expected to know all of the legal theories on which they might ultimately recover"); Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001)(*Pro se* pleadings must be read "to raise the strongest arguments they suggest.").

than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotations marks and citations omitted).

Federal Rule of Civil Procedure 8(a) requires the plaintiff to provide "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). On a motion to dismiss pursuant to Rule 12(b)(6), the court reviews the face of the plaintiff's complaint and accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

Federal Rule of Civil Procedure 9(b) provides, in relevant part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b)

requires the plaintiff to, "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)). "The heightened pleading standard of Rule 9(b) applies to state common law claims where those claims are premised on a defendant's underlying fraudulent conduct[.]" U.S. ex rel. Kester v. Novartis Pharm. Corp., 23 F. Supp. 3d 242, 269 (S.D.N.Y. 2014).

## Discussion

### I. Materials Outside the Complaint

Groff has attached to his Motion to Dismiss copies of two documents purporting to be the items TFS received from Stine, both of which have additional markings made after TFS attempted to deposit the items as personal checks (Doc. 7-2.) Groff argues that these documents show that Stine's account lacked sufficient funds to complete each of the transactions alleged.

As a general rule, "[w]hen material outside the complaint is presented to and not excluded by the court" in support of a motion to dismiss, "the motion shall be treated

as one for summary judgment and disposed of as provided in [Federal Rule of Civil Procedure] 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion . . . ." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, material outside the pleadings may be considered by the Court where the material is attached to the complaint, where the complaint incorporates the material by reference, or where the material is "integral" to the complaint, such that the complaint "relies heavily upon its terms and effect." Id. At 152-53 (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

Here, the original copies of the payment documents themselves (Docs. 1-6, 1-19) are attached to the Complaint, are incorporated by reference, and are otherwise integral to the Complaint because they constitute the alleged tender of payment to TFS/TMCC. The Court has not considered the "processed" versions of the payment documents submitted by Groff, however, because whether Groff's account held sufficient funds to pay the amounts alleged need not be addressed for purposes of ruling on the pending motion.

Therefore, the Court will not convert the motion to one for summary judgment and will proceed on the motion to dismiss without analyzing the exhibits provided by Groff.

II. Federal Law Claims

A. 18 U.S.C. §§ 655 and 656

Stine alleges that because Groff failed to deny in writing Stine's claims that Groff violated 18 U.S.C. §§ 655 and 656, Groff is liable to Stine for monetary damages. However, no private cause of action exists under either provision that would entitle Stine to civil damages or to any other civil remedy sought here. See Gideon Minerals U.S.A., Inc. V. JP Morgan Chase Bank, No. 02 Civ. 10140(JSM), 2003 WL 21804850, at *1 (S.D.N.Y. Aug. 6, 2003) ("Section 656 of Title 18 is a criminal statute which does not provide a private right of action to the victim of the crime."); Turner v. E. Sav. Bank, FSB, No. 09-CV-2637-AW, 2010 WL 1409858, at *2 (D. Md. Apr. 2, 2010) (holding that § 655 "provide[s] no private cause of action or civil penalties" because it is a criminal statute). Therefore, all claims pursuant to 18 U.S.C. §§ 655 and 656 are DISMISSED.

B. 42 U.S.C. § 1983

Stine also alleges that Groff is liable for federal

constitutional violations pursuant to 42 U.S.C. § 1983. However, "[i]n order to state a claim under § 1983, a plaintiff must allege that he was injured either by a state actor or by a private party acting under color of state law." Ciambriello v. County of Nassau, 292 F.3d 307, 323 (2d Cir. 2002). A plaintiff must show that a private defendant was "a willful participant in joint activity with the State or its agents" in order to be held liable under § 1983. Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970). Stine has not alleged any facts to suggest that Groff is a state actor who acted under color of state law, or that he participated in joint activity with any state government entity. Therefore, all § 1983 claims against Groff are DISMISSED.

## III. State Law Claims

### A. Uniform Commercial Code

The primary basis of Stine's state law claims is that when TFS/TMCC did not return the "EFT only instruments" by midnight the following business day after receiving them, the creditor accepted tender of payment by operation of law. Stine argues that as a result, TFS/TMCC should have discharged both loans, released the liens, and conveyed both certificates of title.

Stine does not cite any legal authority for this proposition, nor can the Court readily discern from the pleadings what type of payment Stine claims to have made. The items in question appear to be personal checks, which are governed by Article 3 of Vermont's Uniform Commercial Code ("UCC"), 9A V.S.A. § 3-101, et seq. However, Stine does not refer to the items as "checks," nor does he argue that TFS should have deposited the items--the items plainly state "Do Not Deposit." Instead, Stine describes the items "financial instruments" or "EFT only instruments," which suggests that he intended to initiate electronic funds transfers governed by Article 4, 9A V.S.A. § 4A-101, et seq. The Court will consider whether Stine sufficiently alleges that he made either form of payment.

i. Article 3

A "check" is defined as "a draft, other than a documentary draft, payable on demand and drawn on a bank[.]" 9A V.S.A. § 3-104(f)(i). To constitute a negotiable instrument, a check must be "payable on demand or at a definite time" and cannot "state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money[.]" 9A V.S.A. § 3-104(a)(2)-(3) and (c). Additionally, "[a]

promise or order is not a [negotiable] instrument if, at the time it is issued or first comes into possession of the holder, it contains a conspicuous statement, however expressed, to the effect that the promise of order is not negotiable[.]" 9A V.S.A. § 3-104(d).

Courts in other jurisdictions that have considered similar attempts to discharge debts by tendering check-like items with "Do Not Deposit" and "EFT Instrument Only" notations all conclude that the items are neither valid personal checks nor negotiable instruments. See e.g., Alaska U.S.A. Fed. Credit Union v. Holland, 178 Wash. App. 1044, 2014 WL 117427 at *2 (Wash. Ct. App. Jan. 13, 2014) (holding that check marked "EFT only! For Discharge of Debt" and "Not for Deposit[,] EFT only[,]" did not constitute a negotiable instrument); MacFadden v. GMAC Mortgage, LLC, No. 2:13-CV-91, 2013 WL 2422579 at *5 (S.D. Tex. June 3, 2013)(holding that check marked "EFT ONLY FOR DISCHARGE OF DEBT" was not a negotiable instrument and "could not have discharged the debt in that form").

Further, where the words "Do Not Deposit" appear on an item bearing the instruction "EFT only," the item is not payable on demand within the meaning of the UCC and not a negotiable instrument. See MacFadden, 2013 WL 2422579 at *5

(observing that"[the item] was ostensibly created to initiate an entirely different method of payment by electronic funds transfer. This was not an order to pay and was not a negotiable instrument as a "check" and could not have discharged the debt in that form.") Like the courts in Holland and MacFadden, the Court here concludes that neither of the items tendered by Stine constituted either a valid personal check or a negotiable instrument.

Therefore, even if the Court were to apply Stine's "midnight deadline" theory under 9A V.S.A. § 4-301, which applies to the deadline for revoking settlement of a deposited check, Stine cannot establish that either item could have initiated the settlement process.[3] See Reid v. Toyota Motor Credit Corp., No. 12 Civ. 7436(PAC)(JLC), 2013 WL 1397143 at *8 (S.D.N.Y. Apr. 8, 2013) (holding that check-like document labeled "EFT ONLY" does not discharge debt or state a cause of action); Koch v. Home Network

[3] Additionally, § 4-301(a) only applies to a "payor bank," or in other words, the bank holding the personal checking account from which Stine would have drawn the checks. See 9A V.S.A. § 4-301(a) ("If a payer bank . . .") and § 4-105(3) (defining "payor bank" as "a bank that is the drawee of the draft"); see also Call v. Ellensville Nat'l Bank, 5 A.D. 3d 521, 523-24 (N.Y. App. Div. 2004) (explaining role of payor bank vis-a-vis collecting banks; 9A V.S.A. § 4-215, Official Comment 8 ("Even if the payor bank has not returned an item by its midnight deadline there is still no final payment if provisional settlement has been made and the settlement failed to become final.")

Mortgage, LLC, No. 12-CV-14760, 2013 WL 392902 at *2 (M.D. Mich. Jan. 31, 2013) (holding that check marked "EFT ONLY FOR DISCHARGE OF DEBT" did not constitute valid tender of payment).

Moreoever, even if Stine sufficiently alleged that he sent two valid personal checks, his debt obligations would not be fully discharged until those checks were paid or certified. See 9A V.S.A. § 3-310(b)(1)("In the case of an uncertified check . . . [p]ayment or certification of the check results in discharge of the obligation[.]"). Stine does not allege, nor do his pleadings suggest, that either item here was paid or certified.

Finally, to the extent Stine might claim that TMCC accepted an accord and satisfaction when it failed to immediately return the checks, thereby discharging his obligation, Stine cannot satisfy the elements of such a claim. Under the UCC, even where a check includes a notation that the maker has tendered it in "full satisfaction" of a debt or claim, the person asserting accord and satisfaction must demonstrate: "(i) that [he] in good faith tendered an instrument to the [other party] as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and

(iii) the [other party] obtained payment of the instrument[.]" 9A V.S.A. § 3-311(a). Here, Stine does not allege any facts to suggest that the amounts owed to TMCC were subject to bona fide dispute, nor that TMCC obtained full payment of either instrument. As a result, Stine cannot prevail on his claim that TMCC "accepted" settlement by check, or that the creditor was required to discharge both loan obligations as a result.

ii. Article 4A

Stine also does not allege sufficient facts to claim that initiated two electronic funds transfers under Article 4A of the Vermont UCC. A "funds transfer" is "a series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order." 9A V.S.A. § 4A-104(a). A "payment order" is "an instruction of a sender to a receiving bank . . . to pay, or to cause another bank to pay, a fixed determinable amount of money[.]" 9A V.S.A. § 4A-103(a)(1).

Here, Stine did not issue orders to a "receiving bank" to pay TMCC, but instead issued both items directly to the beneficiary. Accordingly, the items tendered do not constitute "payment orders" under § 4A-103(a)(1). See McFadden v. GMAC Mortgage, LLC, No. 2:13-CV-91, 2013 WL

2422579 at *5 (S.D. Tex. June 3, 2013) (holding that document resembling personal check and marked "EFT ONLY FOR DISCHARGE OF DEBT" did not constitute "payment order" under Texas UCC); Stout v. Carmax Auto Finance, No. 12-2996, 2013 WL 6231152, slip op. at *5 (W.D. Tenn. Dec. 2, 2013) (holding that document resembling personal check marked "EFT ONLY DISCHARGE OF DEBT" was not a "one-way wire transfer").

Furthermore, a funds transfer is not complete until "acceptance by the beneficiary's bank[.]". See 9A V.S.A. § 4A-104. Here, Stine alleges that TFS/TMCC, the beneficiary, accepted the "EFT only instrument" by virtue of not returning it to Stine upon receipt; he does not allege acceptance by the creditor's bank.

Nor does acceptance occur by operation of law under these circumstances. As the MacFadden court observed, "[t]here is no deadline for rejection of a payment order if it is not accepted and transmitted to another bank[.]" MacFadden, 2013 WL 2422579 at *5 (concluding under similar facts that "no bank 'accepted' any payment order under Article 4A of the UCC). Ultimately, neither "EFT only instrument" constitutes a valid tender of payment, because banks, not beneficiaries, receive and accept payment orders underlying the funds transfers. Therefore, Stine has not

alleged sufficient facts to show that he tendered two electronic funds transfers.

Because Stine cannot establish that he made a valid tender of payment in either instance, his breach of contract claims are DISMISSED. In the absence of a valid legal claim entitling him to a writ of replevin or to other declaratory or injunctive relief with respect to the two vehicles, those claims for relief are DISMISSED as well.

B. Fraud

Stine's remaining state law claim alleges that Groff is liable for fraud because he failed to refute the claims in Stine's letters, thereby "confessing liability." (Doc. 1 at 8.) Groff argues that Stine has defeated this claim by affirmatively alleging Groff never responded, because he has not alleged any misrepresentation on Groff's part.

Under Vermont law, fraudulent inducement in contract requires the plaintiff to show, "an intentional misrepresentation of existing fact, affecting the essence of the transaction . . . [that was] false when made and known to be false by the maker [and] was not open to the defrauded party's knowledge, and was relied upon by the defrauded party to his damage." Silva v. Stevens, 589 A.2d 852, 857 (Vt. 1991). Here, Stine does not allege that Groff made any

statements or omissions. Nor does Stine provide any other factual basis that would support a legal theory that Groff is liable for actual fraud, constructive fraud, fraud in the factum, fraud by inducement, or fraud by conversion. The fact that Groff did not affirmatively deny the allegations contained in Stine's letter does not constitute an admission of civil liability. Accordingly, all fraud claims against Groff are DISMISSED.

IV. Leave to Amend

District courts generally should not dismiss a *pro se* complaint without granting leave to amend. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). However, the Court need not grant leave to amend where doing so would be futile. See id. ("The problem with [plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). Here, the Court concludes that leave to amend would be futile, because better pleading will not cure the absence of a viable legal theory entitling Stine to the relief he seeks.

Conclusion

For the reasons set forth above, Defendant Michael

Groff's Motion to Dismiss is GRANTED, and the case is DISMISSED WITH PREJUDICE.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 26th of August, 2015.

/s/ William K. Sessions III
William K. Sessions III
Judge, United States District Court